May it please the Court. My name is Barry Sullivan. I represent Catholic Healthcare West, doing business at St. Mary's Hospital. I'll refer to her as St. Mary's Hospital for purposes of reference here. This is a case that got off on the wrong foot right from the start, and that was its mischaracterization by the appellees in this case of what we were suing upon. Rights of action are like arrows in an archer's quiver. There's various types of arrows that we might shoot at our opponents to collect on them. Contract-based causes of action, negligent misrepresentation causes of action. We even had a federal arrow cause of action. That's what I'll call the ERISA-based cause of action, based upon an assignment of benefits that we received from the patient. We can choose which arrows to shoot, and we can choose which arrows to keep in our quiver. And we chose to keep in our quiver the ERISA-based cause of action. We never shot it at them. As a result of that, we pursued only a state-law-based claim in court and state court against them, which was, as you know, removed. But upon removal, we said to Judge Ilston, Judge Ilston, we have only state-law-based causes of action. And it was at that point that the argument was raised that we have an assignment of benefits, which is true. We'll admit that and concede that for purposes of argument here. But that's not the point. Under their theory, just because we have an assignment of benefits under ERISA ---- Scalia. Not quite, counsel. You claim an oral contract to pay your usual and customary fees. That is correct. Their defense raised in the 12b-1 motion as to subject matter jurisdiction, which there can be the supplementation of the pleadings themselves. We look at more than the pleadings, right, in determining whether the subject matter jurisdiction. Say that your contract is half the story, your version of the contract. They say, yes, we said he's covered, but with the limitations of our ERISA plan. So that on the theory of contract formation, those limitations are incorporated into the contract. If that is the situation as to the ultimate determination of what the contract is, there must be an interpretation of those contract limitations under the ERISA plan. The question is, should that be done in a state tribunal with a different rule for summary judgment, with a jury that is 9-3 instead of 12-0, or 6-0? And can you retain those advantages as a plaintiff, rather than have the matter determined in the federal court by federal procedures? So now that's the issue. As a matter of statute, does this relate to the ERISA plan in the sense that it requires a federal tribunal to determine the rights under ERISA plan? Isn't that the issue? As posed by you, the issue would be resolved by the Cedars case in that it would say that incidental reference to a planned document, as further referenced in the Blue Cross case, incidental reference to the planned document. It's not so incidental. Suppose that the ERISA plan said $100 a day is the maximum for a hospital room, and you're charging $1,000 a day. That's not so incidental. That's a price list. That's a term, it's an integral term of the contract. Does the Cedars case deal with a price list as an incidental issue? Well, I wouldn't say that it dealt with a price list, but I would say that the issue itself was dealt with because of the cascading effect that their argument would have. If I may, if we bring an action in state court and we say they promised us $1,000 a day to pay us, and we said fine. We perform the surgery, we take care of their member, we get that member well as best we can, and we incur millions of dollars, or at least in this case, over $700,000 of unpaid charges. And then we ask them to pay the $1,000 a day. And then they tell us, no, our plan requires us to only pay reasonable customary, and we've decided that reasonable customary is $100 a day. Well, then we go to court. We go to state court saying we've formed a contract and our contract was breached. And they say, no, this is preempted by ERISA. So we go from state court to federal court. And in federal court, the argument is, well, you can't bring in any of these other promises that we may have made, because our plan document is all that we have to pay, and our plan says $100 a day. That would be a factual question to be determined by the trier of fact. What was the contract? Was it usual and customary? Or was it usual and customary as limited by ERISA limitations, ERISA plan limitations? If they find, that's a classic issue for a trier of fact for a jury to find, who said what, right? A classic for a state court, for contract formation purposes. But the danger here, Your Honor, is that in federal court, we're not even allowed to bring in those other issues because their plan documents say $100 a day. We are left with no form. But before you can get to $100 a day, you've got to, they've got to prove that $100 a day was part of the contract. Well, they're saying it was reasonable and customary, and reasonable and customary is in our contract with our beneficiary. And we're saying, we want to bring in the contract promises that you made to us. And they're saying, no can do. What we are- Judge Ilston didn't judge Ilston say. I mean, she basically characterized what had occurred as a situation of artful pleading on the part of plaintiff. Recognizing plaintiff's the master of their complaint, that they artfully pled to avoid specifically referencing an ERISA claim. Right. But in so holding, didn't she, didn't she speak to the very question that Judge Bay is, is I think addressing? That to determine the reasonable and customary nature of the charges, there was going to necessarily be an interpretation of the Seafarer's plan. Well, I would say that that's undeniable at this point. But the danger is, if we're not allowed to press our contract claims in state court, then we're not allowed to press our contract claims in federal court either. Why? Because we're not allowed to bring in our, the promises that they made that were outside the plan contract documents. Well, of course you are. You can bring in the promises they made and 20 bishops who heard them and say they never mentioned the limitations under ERISA and you should be paid your customary and usual. Your Honor, that's bootstrapping. The complaint itself doesn't reference any kind of contract like that. Your complaint doesn't, but their response under 12b1 makes the ERISA plan part of your contract. Maybe, maybe not. It depends on the trier of fact. I understand, Your Honor. But my position, you're going to have to argue me out of this. If the trier of fact finds that the limitations under the ERISA plan were part of the contract, then what those limitations are is an interpretation of an ERISA plan. And shouldn't that be done in federal court for uniformity rather than state court? That's my. Very well, Your Honor. I'll reserve the rest of my time for review. Okay. May it please the Court, my name is Scott DiNardo and I'm of the law firm Neihard Anderson, Flynn & Groswall here in San Francisco. I represent the CFARES Health and Benefits Plan, to which I'm going to be referring to as the CFARES or the plan. I will refer to St. Mary's Medical Center as either St. Mary's or the hospital. One thing that I'd initially like to say in opening my remarks is this case only involves preemption. The same the hospital has already conceded that in their opening brief at page 6, that if this case was determined under ERISA, they would lose. And so what is this case really about? This case is really about a second bite at the apple. After the hospital got an assignment from our plan participant, W.D., the assignment is not pleaded in the plaintiff's complaint. They're not proceeding on the assignment. They're proceeding on their common law remedies. Why mention the assignment? The assignment is intertwined with their position, is intertwined with their complaint. In order to... No, no. You're trying to make them make a claim they're not making. That doesn't happen. They're the masters of their claim. Please proceed to other portions of your argument. Like, for instance, what about the cases, I think it's Mountain West, right? Where the issue was whether the people were covered under the plan and there was a misrepresentation that they were covered and they received addiction treatment. And that did not involve Federal law nor ERISA preemption, but they could follow and get their common law remedies. Are you acquainted with that case? I'm sorry, Your Honor, if you can give me the site. All right. Go ahead. In this case... Pardon me. I said Mountain West. I meant the Meadows. Okay. Yes. The Meadows case I'm familiar with. The Meadows Memorial Cedars-Sinai preemption test, which is articulated again in Cedars-Sinai. That test, and this is where the assignment comes into play, that their position as an assignee of WD, they stood in the shoes of WD. They utilized... That's not the argument they're making, though. They're making a different argument. That's not the claim that they chose to make in their complaint. They're arguing that you had an independent relationship with the hospital that required you to pay based on an oral contract. That may or may not be a winning argument. An oral contract is going to be a very tough one to make. And it may not have even been their best argument, but it is different from making an argument as the assignee of the ERISA plan. Well, if you look at their complaint, and this is what it boils down to, is if you look at their actual complaint, they reference plan terms ten times in ten different places in their complaint. Medically necessary, reasonable, and customary. Those are plan terms. The plan trustees cannot pay, and the disclaimer was given to St. Mary's when they called, both in a recorded message and as well as live, that plan benefits will only be paid in accordance with the rules and regulations of the plan, in accordance with the terms and conditions of the plan. The plan itself, which is in the record, clearly indicates that the Seafarer's Benefits Plan cannot pay what is outside reasonable and customary, as well as medically necessary treatment. But the determination of what's reasonable and customary, why can't that be done over there at 400 McAllister Street in the Superior Court? I mean, do you distrust those folks? I'd better not say, I was there for so many years. It involves an interpretation of an ERISA plan, which is why this case is preempted by ERISA. It affects the rights. Why would it involve an interpretation of the ERISA plan? From Plaintiff's perspective, I think they're still on the first bite of the apple from their perspective. Again, while Judge Ilston characterized the pleading as an artful one, in this case, didn't the plaintiffs, weren't they within their rights? Is there anything that lacks viability in terms of the argument they make for an implied contract in this, in the first instance as a independent State claim? Well, if you look at the complaint, you would have to – if you look at the actual provision in the complaint, I believe it's a paragraph 10, there's only one sentence that references an implied contract. To have an implied contract, you have to have a meeting of the minds. And there was no meeting of the minds in this case because- Sounds like an excellent defense in State court. But then you go back to the plan, terms, and conditions. CFERS has always operated under that we would pay the medical, we would pay in accordance with the plan's terms and conditions. We did that. We, in fact, took St. Mary's status as an assignee and it permitted them to appeal, not once, but twice under the plan. And we made supplemental payments to St. Mary's Medical Center. This is the second bite at the apple. So are they allowed to keep those funds as an assignee and then come back into State court and assume a breach of contract claim? Why not? Do you have a case that says they can't? All right. Now, you want reasonable and customary under your plan determined by a Federal judge. Contract is made in California. People are served in California. Reasonable and customary, those are terms that can be interpreted under California statutes, 1635 of the Civil Code. If this were an insurance contract rather than an ERISA plan, there wouldn't be any problem. We'd just take a look at what the limitations of the insurance contract were and interpret them, are they being reasonable or are they not being reasonable. I don't see what's so precious about your position that it has to be interpreted by a Federal court. Our position is, is that we made a qualified verification of coverage. That verification of coverage was qualified and was based upon the plan terms and conditions. That's how we made it. When we qualify the acceptance of coverage, we're qualifying it in addition to what we're saying here now to mean that the determination of any disputes has to take place in Federal court? There wasn't that, was there? No, those were not there. But the actual disclaimer reads, you know, if it pleases the Court, that the benefits and eligibility quoted today reflects the information in our system today. It is not a guarantee of benefit payment. All claims are processed in accordance with the plan rules. The plan rules provide specific exclusions and limitations, some of which involve the circumstances. Counsel, in an insurance contract, there are always exclusions and limitations, but they can be interpreted by a State court, can't they? What makes this so what policy reason, if you want to talk about policy reasons, what policy reasons are there to interpret this in a Federal court rather than a State court? Well, it's interesting that you should know that, because Judge Ilston, in a case that hasn't been published yet, and that we just found on Lexis the other day, states in a factually similar case to this, she states, The Court also notes that to find otherwise would undermine the policy's underlying ERISA. If, under the facts presented here, a health care provider could avoid ERISA preemption despite having received an assignment of ERISA benefits, being partially paid under an ERISA plan, and having filed an ERISA appeal, ERISA plans would be reluctant ever to orally confirm coverage. We have an ERISA appeal here. There was a letter that was sent by St. Mary's challenging the amount of payment that was made. Now, I recognize that CFAIRS may have elected to proceed, but was there an appeal under some administrative procedure, an ERISA plan, by that letter challenging? Did they express? There are two appeals, actually, and those are also in the record in our motion for summary judgment. And as a result of those appeals, and submitting the claims to an outside independent doctor, Dr. Kaplan, the plan made a determination to pay an additional 8 days of inpatient care, which resulted in another payment to St. Mary's Medical Center. They utilized the plan provisions pertaining to the appeals process. Counsel, how is the program offered by CFAIRS different from ordinary insurance that just wasn't an ERISA plan? How is it different from ordinary? How would it be different from ordinary insurance? If this were Blue Cross Blue Shield instead of CFAIRS, St. Mary's calls up Blue Cross and Blue Cross says, yeah, we'll pay, here's what we're paying. Well, I think in those cases that Blue Cross and Blue Shield probably are in a written contract, in a written agreement with the hospital. In this case, there was no written agreement between the plan and the hospital. The sole thread upon which they hang this contract is upon a phone conversation, which, you know, the evidence is clear that we have stated at all times that we are only going to pay what the plan provides. The trustees of the plan cannot pay an additional 8 days. Does CFAIRS offer non-ERISA insurance? Does CFAIRS insure anybody else that it's not under something that's not an ERISA plan? Does CFAIRS only offer ERISA? That's correct. CFAIRS held the benefits plan as a multi-employer plan, and that's the, it's an ERISA plan. They don't have any non-ERISA plans. So CFAIRS does not have any independent contracts with any hospitals? No. In fact, they did several years ago with St. Mary's, but that's not in the record. And I thank the Court for your time. Thank you, Mr. DiNardo. Mr. Sullivan? We pursued an appeal within their organization, but that was not what was the basis of our complaint. Once again, back to my arrow analogy, that was not the arrow that we were shooting in this complaint. Just because we have multiple avenues of trying to recover, including non-judicial ones, doesn't mean that we're forever bound to be pursuing the ERISA appeal process from then on. We were pursuing strictly an oral contract cause of action, and whatever rights and actions and rights of recovery flow from that was in fact the basis of our action. Council also said that we were referencing the plan terms in our complaint. I can assure the Court that that's purely because the English language has a common set of words, and that in the hospital reimbursement industry, terms and phrases such as usual and customary and reasonable are things that are bandied about. They may have been indeed in the plan terms, but they were also in our complaint. But that is where they meet, and only on that basis, and not because we were attempting to quote from their plan. We weren't. Well, your quantum merit claim wouldn't entitle you to unreasonable recovery anyway, would it? I would have to say so. Unless the Court has any other questions of me, I'll submit. Thank you, Council. I appreciate the argument of both Council. The case is submitted. And the next case is Pierce v. Romeo. As you were coming up, I see that Mr. Pierce is represented by Mr. Jahnke, is that correct? Yes. Okay. Okay. We have 15 minutes allotted per side for, on the side of the appellees, I see four counsel listed. Are you dividing time between all four counsel? Good morning, Your Honor. May it please the Court. Michael Reedy. I'm representing Richard Alexander. He's named in six out of, I believe, the 31 causes of action. And per agreement of counsel, and with direction from the Court, I had reserved 10 minutes for Mr. Alexander. Bruce Funk, who is here, would like 5 minutes for Lindy Sheffer. And then we also have Tom Blake, who represents the State defendants. Yes, sir. Mr. Frederick Baker for Susan Levin. And so we are amenable to whatever the Court would like. Well, have you worked something out between you? I mean, you know, I heard that, Mr. Reedy, you wanted 10 minutes and Mr. Funk wanted 5 minutes. Well, you made the time, you have 15 minutes. As an appellate attorney, I never thought it was a good practice to everybody take — I was once a counsel in a case in which it looked like each of us can get 4 minutes and 20 seconds, and we didn't think that was a particularly good strategy. But you may divide it any way you want, but you have 15 minutes among your side. So if 10 and 5 is the way that you divided it and that was agreeable to everybody else, we are happy with that. If you want to divide it in a different way — I just wanted to make sure there was no misunderstanding before we started. Before we start, counsel, the Court is going to take a brief break. So the Court will stand in recess for about 5 minutes. All rise. This Court is now dismissed in recess. Yes, Mr. Janky? Good morning, Your Honor.
judges: Bybee, Bea, Pro